KATHLYN MARIE STEIN AND MICHAEL HOOTSTEIN, PLAINTIFFS V. ASHEVILLE CITY BOARD OF EDUCATION, COOPERATIVE LEARNING CENTER (ALSO KNOWN AS WOLFE CREEK SCHOOL, NOW BUNCOMBE COMMUNITY SCHOOL WEST, AT THE TIME ADMINISTERED JOINTLY BY BLUE RIDGE HUMAN SERVICES FACILITIES, INC. AND/OR BLUE RIDGE MENTAL HEALTH AND/OR ASHEVILLE CITY BOARD OF EDUCATION AND/OR BUNCOMBE COUNTY BOARD OF EDUCATION), BUNCOMBE COUNTY BOARD OF EDUCATION, BLUE RIDGE CENTER FOR MENTAL HEALTH, AND BLUE RIDGE AREA AUTHORITY, DEFENDANTS

No. COA03-1498

(Filed 1 February 2005)

**1. Appeal and Error— refiled action—appeal not timely**

Plaintiffs' appeal of the trial court's dismissal of their claims against the Buncombe County School Board was dismissed as untimely where the original notice of appeal was on 11 June 2001; that appeal was dismissed as interlocutory, which left the trial court's order intact subject to a subsequent appeal; plaintiffs had dismissed their claims against other parties while the appeal was pending and had several options for maintaining their original challenge; rather than pursue those options, they filed this action, which was also dismissed; and they gave notice of appeal on 5 September 2003. The original dismissal was with prejudice, so that the refiled action was barred by res judicata, and any notice of appeal on 5 September 2003 from the 11 June 2001 order was untimely.

**2. Schools and Education— negligence by bus driver and monitor—jurisdiction—Industrial Commission**

The Industrial Commission had exclusive jurisdiction over plaintiffs' claims against the Asheville School Board arising from a bus driver and a bus monitor not reporting threats from emotionally handicapped children who had problems with anger and violence. The plain language of N.C.G.S. § 143-300.1 makes the statute applicable to negligent acts of the driver and monitor and not just to mechanical defects. There is no concurrent jurisdiction in superior court because plaintiff asserted claims only against the Board, and such claims are barred by sovereign immunity. The immunity waiver coming from the purchase of insurance does not apply to claims within the scope of N.C.G.S. § 143-300.1.

**3. Negligence; Schools and Education— area mental health program—violent students—school bus driver and monitor—failure to report conversations—negligence**

Plaintiff shooting victim's complaint was sufficient to state a claim for negligence against defendant area mental health program for violent students where it alleged that the driver and monitor of a public school bus that transported students with behavioral and violence problems to a cooperative learning center failed to report overheard conversations in which one student told another that he had a gun and the two students planned to rob and kill someone, the driver and monitor were acting within their duties for defendant area mental health program, and the two students and others attempted to rob plaintiff and shot her in the head.

Judge TYSON concurring in part and dissenting in part.

Appeals by plaintiffs from orders entered 11 June 2001 by Judge James E. Lanning and on 8 August 2003, 13 August 2003, and 8 September 2003 by Judge Zoro J. Guice, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 1 September 2004.

*Orbock, Bowden, Ruark & Dillard, P.C., by Mark A. Leach and Kristen L. Harris, for plaintiffs-appellants.*

*Schwartz & Shaw, P.L.L.C., by Richard A. Schwartz and Michael R. Delafield, for defendant-appellee Asheville City Board of Education.*

*Patrick, Harper & Dixon, L.L.P., by David W. Hood, for defendants-appellees Cooperative Learning Center, Blue Ridge Human Services Facilities, Inc., Blue Ridge Mental Health, Blue Ridge Center for Mental Health, and Blue Ridge Area Authority.*

*Roberts & Stevens, P.A., by Christopher Z. Campbell and K. Dean Shatley, II, for defendant-appellee Buncombe County Board of Education.*

GEER, Judge.

Plaintiffs Kathlyn Marie Stein and Michael Hootstein appeal from the trial courts' orders dismissing their claims against the Buncombe County Board of Education (the "Buncombe County Board") and the Asheville City Board of Education (the "Asheville Board"). Because plaintiffs have not timely appealed from the order dismissing the

claims against the Buncombe County Board, we dismiss the appeal from that order. As for the Asheville Board, we hold that the trial court properly concluded that the Industrial Commission has exclusive jurisdiction over those claims and, therefore, affirm the trial court's order dismissing all claims against the Asheville Board.

Plaintiffs also appeal from the trial court's dismissal of their claims against the Blue Ridge Area Authority and programs operated by the Authority, including the Cooperative Learning Center ("CLC") and Blue Ridge Center for Mental Health (collectively "the Blue Ridge defendants"). Because the allegations of the complaint are sufficient to state a claim for relief with respect to the Blue Ridge defendants, we reverse the trial court's order granting the Blue Ridge defendants' motion to dismiss.

## Facts

Plaintiffs' amended complaint alleged the following facts. Juveniles J.B. and C.N., who were 13 and 15 years old respectively, were behaviorally/emotionally handicapped children. Both had also been identified as having problems with anger and violence. They attended school at CLC and traveled to and from CLC on a public school bus driven by Nancy Patton. The bus monitor was Gail Guzman. The amended complaint alleged (1) that "at all pertinent times, [Patton] was acting as an employee for" the Asheville Board, CLC (including related entities), the Blue Ridge Area Authority, and/or the Buncombe County Board, and (2) that Guzman, at the time of "[a]ny acts or omissions," was acting within "the course and scope of her duties" for the Asheville Board, the Blue Ridge Area Authority, CLC, and the Buncombe County Board.

A week prior to 17 March 1998, Guzman overheard C.N. tell J.B. that he had a gun at his house under his mattress. She also overheard a second conversation in which C.N. suggested to J.B., "Let's rob somebody." When J.B. responded, "Okay," C.N. said, "I have the gun." J.B. stated, "I'll kill them." Guzman reported the conversation to bus driver Patton. Neither Guzman nor Patton informed anyone at CLC, Buncombe County Schools, Asheville City Schools, or the Asheville Police Department about what Guzman had overheard.

On 17 March 1998, from approximately 7:00 p.m. until 8:15 p.m., J.B. and C.N., along with another minor and an 18 year old, began stopping cars at an intersection in Asheville. They approached three different cars with the intent to rob and kill each of the drivers. J.B.

STEIN v. ASHEVILLE CITY BD. OF EDUC.

[168 N.C. App. 243 (2005)]

used a loaded handgun supplied by C.N. to shoot Stein in the head. As a result of the shooting, Stein has suffered vascular injury, spinal fracture, nerve damage, and post-traumatic stress disorder. All four assailants entered guilty pleas to charges stemming from their assault on Stein.

## Procedural History

On 1 March 2001, plaintiffs filed an initial complaint in file number 01 CVS 1219, asserting claims arising out of the shooting against essentially the same defendants sued in this case. The trial court dismissed with prejudice plaintiffs' claims against the Buncombe County Board on 11 June 2001. Plaintiffs filed an interlocutory appeal of that order. On 22 January 2002, prior to receiving a decision from this Court, plaintiffs voluntarily dismissed without prejudice their claims against all the remaining defendants. Plaintiffs did not notify this Court of the voluntary dismissal.

On 16 July 2002, this Court filed an unpublished opinion dismissing as interlocutory plaintiffs' appeal of the Buncombe County Board's dismissal. *Stein v. Asheville City Schs.*, No. COA01-1028, (N.C. Ct. App. July 16, 2002) (unpublished). Plaintiffs did not seek rehearing of that dismissal.

Instead, on 17 January 2003, plaintiffs filed this action against the Buncombe County Board, the Asheville Board, the Blue Ridge defendants, and the Asheville City Schools. Plaintiffs' amended complaint, filed 21 January 2003, dropped the Asheville City Schools as a defendant. On 11 April 2003, the Buncombe County Board moved to dismiss the amended complaint under N.C.R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. The Blue Ridge defendants simultaneously answered and moved to dismiss under Rule 12(b)(6) on 22 April 2003. On 13 June 2003, the Asheville Board also filed a motion to dismiss under Rule 12(b)(6) and under Rule 12(b)(7) for failure to join a necessary party.

The trial court granted the Buncombe County Board's motion on 8 August 2003, the Asheville Board's motion to dismiss on 13 August 2003, and the Blue Ridge defendants' motion on 8 September 2003. Plaintiffs appeal all three dismissals.

## The Buncombe County Board

[1] Plaintiffs contend, in this appeal, that the trial court erred in dismissing their claims against the Buncombe County Board in the order

filed 11 June 2001. The Buncombe County Board argues in response that the appeal from this order, filed 5 September 2003, is untimely. We agree with the Buncombe County Board.

In its 11 June 2001 order in the 01 CVS 1219 action, the trial court directed "that plaintiffs' Complaint against . . . the Buncombe County Board of Education is dismissed, with prejudice." On 2 July 2001, plaintiffs filed notice of appeal of that order. This Court's dismissal of that appeal on 16 July 2002 explained:

> In the instant case, the order appealed from is interlocutory as there has been no final judgment as to all of the parties. While the trial court's order does not constitute a final adjudication of the claims against the City of Asheville and the Buncombe County Board of Education, the record does not indicate that plaintiffs' claims against the other named defendants (Asheville City Schools, Blue Ridge Center for Mental Health, Blue Ridge Area Authority, Buncombe County and Buncombe County Department of Social Services) have been dismissed or otherwise adjudicated. The trial court did not certify the order pursuant to Rule 54(b), and plaintiffs have failed to present any argument in their brief to this Court that a substantial right will be affected if this appeal is not accepted at this time. Accordingly, plaintiffs' appeal must be dismissed.

As a result of this dismissal, plaintiffs could still appeal the 11 June 2001 order once a final adjudication was entered in the underlying case.

Plaintiffs' voluntary dismissal of the "remaining claim[s] . . . ha[d] the effect of making the trial court's grant of partial summary judgment a final order." *Combs & Assocs., Inc. v. Kennedy*, 147 N.C. App. 362, 367, 555 S.E.2d 634, 638 (2001). Ordinarily, with the filing of the voluntary dismissal, plaintiffs would have had 30 days in which to appeal the trial court's Buncombe County Board order. Significantly, however, this voluntary dismissal occurred while the initial appeal of that order was still pending before this Court and four months before the filing of the decision dismissing the appeal as interlocutory.

Once they filed their voluntary dismissal of the remaining claims, plaintiffs had various options with respect to the Buncombe County Board order. First, immediately after the filing and prior to this Court's rendering its decision, they could have notified the Court of the voluntary dismissal and filed a motion to amend the record to

include the voluntary dismissal. *See Tarrant v. Freeway Foods of Greensboro, Inc.*, 163 N.C. App. 504, 507-08, 593 S.E.2d 808, 811 (declining to dismiss appeal from partial summary judgment order, even though initially interlocutory, because of plaintiff's voluntary dismissal of the remaining claims prior to the Court's ruling), *disc. review denied*, 358 N.C. 739, 603 S.E.2d 126 (2004).

Alternatively, plaintiffs could have petitioned this Court for rehearing pursuant to N.C.R. App. P. 31(a) following issuance of this Court's decision holding the appeal to be interlocutory. In the recent case of *McManus v. Kluttz*, 165 N.C. App. 564, 599 S.E.2d 438 (2004), this Court had dismissed as interlocutory an appeal from an order granting partial summary judgment to the plaintiff, unaware that a voluntary dismissal had been filed resulting in the appealed order becoming a final judgment. The Court subsequently withdrew its first opinion and reached the merits of the appeal. *Id.* The Court, however, sanctioned the appellants' counsel pursuant to N.C.R. App. P. 34(a)(3) and 34(b)(2) for failing to inform the Court of the voluntary dismissal.

Third, plaintiffs could have renewed their appeal within 30 days of this Court's decision, pursuant to N.C.R. App. P. 3(c). *See Whitford v. Gaskill*, 119 N.C. App. 790, 792, 460 S.E.2d 346, 347 (1995) (defendant appealed from summary judgment order, but Court dismissed appeal as interlocutory because damages had not been determined; on remand, plaintiff voluntarily dismissed her claim for damages and this Court allowed defendant's renewed appeal), *rev'd on other grounds*, 345 N.C. 475, 480 S.E.2d 690 (1997).

Plaintiffs did not, however, pursue any of the procedures available to maintain their challenge to the trial court's dismissal of the Buncombe County Board until they filed the present notice of appeal on 5 September 2003. Plaintiffs' appeal on 5 September 2003 of the 11 June 2001 order was untimely and failed to satisfy the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure, requiring that a party file and serve a notice of appeal within 30 days after entry of judgment. As this Court has explained:

> In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure. Appellate Rule 3 is jurisdictional and if the requirements of this rule are not complied with, the appeal must be dismissed.

*Henlajon, Inc. v. Branch Highways, Inc.*, 149 N.C. App. 329, 331, 560 S.E.2d 598, 600 (2002) (internal citations and quotation marks omitted). Because plaintiffs failed to take timely action to appeal, we do not possess jurisdiction to address plaintiffs' appeal of the 11 June 2001 order dismissing the claims against the Buncombe County Board. We, therefore, dismiss this appeal to the extent it purports to appeal from the 11 June 2001 order.

Plaintiffs argue that because they intended to refile their action and wanted to avoid presenting a "fragmented case" to this Court, this Court may still review the 11 June 2001 order. Plaintiffs' argument fails to recognize that the trial court dismissed the claims against the Buncombe County Board "with prejudice." This Court's dismissal of plaintiffs' appeal from the 16 July 2001 order as interlocutory left that order intact subject to a subsequent appeal. "The legal import of the words 'with prejudice' as applied to a judgment of dismissal is to terminate the action operating as *res judicata* and barring any further prosecution by the plaintiff of the same cause of action." *Ottinger v. Chronister*, 13 N.C. App. 91, 96, 185 S.E.2d 292, 295 (1971). Without a reversal by the Court of Appeals of the dismissal "with prejudice," any refiling of the claims against the Buncombe County Board was barred by *res judicata*. The trial court in this case, therefore, properly dismissed the reasserted claims against the Buncombe County Board.

### The Asheville Board

**[2]** Plaintiffs next argue that the trial court erred in concluding that the Industrial Commission had exclusive jurisdiction over their claims against the Asheville Board. We disagree.

N.C. Gen. Stat. § 143-300.1 (2003) states:

The North Carolina Industrial Commission shall have jurisdiction to hear and determine tort claims against any county board of education or any city board of education, which claims arise as a result of any alleged mechanical defects or other defects which may affect the safe operation of a public school bus or school transportation service vehicle resulting from an alleged negligent act of maintenance personnel *or as a result of any alleged negligent act or omission of the driver, transportation safety assistant, or monitor of a public school bus* or school transportation service vehicle . . . .

(Emphasis added.) Plaintiffs argue that the statute does not apply because their claims do not arise as a result of any mechanical or other defect in the bus caused by a negligent act or omission of the driver.

The plain language of the statute, however, makes it applicable not only to mechanical defects affecting the bus, but also claims arising "as a result of any alleged negligent act or omission" of a driver or monitor. The statute's broad scope was confirmed by the Supreme Court in *Huff v. Northampton County Bd. of Educ.*, 259 N.C. 75, 77, 130 S.E.2d 26, 28 (1963) (citing N.C. Gen. Stat. § 143-300.1):

> An award against a county board of education under the provisions of the Tort Claims Act . . . must be based on the negligent act or omission of the driver of a public school bus who was employed at the time by the county or city administrative unit of which such board was the governing body.

In *Huff*, the plaintiff had asserted a claim in the Industrial Commission, alleging the bus driver negligently failed to prevent a fight. *Id.*

In *Newgent v. Buncombe County Bd. of Educ.*, 340 N.C. 100, 455 S.E.2d 157 (1995), our Supreme Court reversed a Court of Appeals decision holding that the Industrial Commission did not have jurisdiction over a negligence claim brought by the parents of a student who was hit by a car while crossing the road to board a public school bus. *Newgent* adopted the dissenting opinion from this Court, which stated that the Industrial Commission had jurisdiction to hear "tort claims wherein certain alleged negligent acts or omissions arose out of, and were inseparably connected to, events occurring at the time a school bus driver was operating the bus in the course of her employment." *Newgent v. Buncombe County Bd. of Educ.*, 114 N.C. App. 407, 409, 442 S.E.2d 158, 159 (1994) (Orr, J., dissenting), *adopted per curiam*, 340 N.C. 100, 455 S.E.2d 157 (1995).

*Huff, Newgent*, and our review of other cases involving N.C. Gen. Stat. § 143-300.1 establish that the Industrial Commission possesses jurisdiction over plaintiffs' claims against the Asheville Board. *See also Crawford v. Wayne County Bd. of Educ.*, 275 N.C. 354, 363, 168 S.E.2d 33, 39 (1969) (applying statute when child struck by bus). Plaintiffs, however, cite *Meyer v. Walls*, 347 N.C. 97, 108, 489 S.E.2d 880, 886 (1997) for the proposition that even when subject matter jurisdiction lies in the Industrial Commission, the superior court retains concurrent jurisdiction.

Plaintiffs misinterpret *Meyer's* holding. Our Supreme Court held in *Meyer* that "[a] plaintiff may maintain both a suit against a state agency in the Industrial Commission under the Tort Claims Act and *a suit against the negligent agent or employee in the General Court of Justice for common-law negligence.*" *Id.* (emphasis added). The plaintiff in *Meyer* alleged claims against individual parties that the Court ruled could be asserted in the trial court division, but her claims against the state entity could only be filed in the Industrial Commission. In this case, plaintiffs failed to join as defendants any employees of the Asheville Board (or, in fact, any individuals at all). Plaintiffs instead assert claims only against the Asheville Board.

Concurrent jurisdiction cannot exist because any claim against the Asheville Board brought in superior court is barred by sovereign immunity. Plaintiffs rely upon N.C. Gen. Stat. § 115C-42 (2003) and the Board's purchase of insurance as providing a waiver of sovereign immunity. After setting out the conditions for waiver of immunity, N.C. Gen. Stat. § 115C-42 concludes with a proviso:

> Provided, that this section shall not apply to claims for damages caused by the negligent acts or torts of public school bus, or school transportation service vehicle drivers, while driving school buses and school transportation service vehicles when the operation of such school buses and service vehicles is paid from the State Public School Fund.

Accordingly, as this Court has previously pointed out, "G.S. 115C-42, by its own terms, apparently does not apply to the type of claims which are covered by G.S. 143-300.1 . . . ." *Smith v. McDowell County Bd. of Educ.*, 68 N.C. App. 541, 543 n.1, 316 S.E.2d 108, 110 n.1 (1984).

Thus, there cannot be concurrent jurisdiction: if a plaintiff's claim against a Board of Education falls within the scope of N.C. Gen. Stat. § 143-300.1, then N.C. Gen. Stat. § 115C-42 excludes the claim from the waiver of immunity. Without a waiver of immunity, the Board of Education cannot be sued in superior court.

Here, plaintiffs' complaint alleges the bus driver and monitor were negligent in failing to report a conversation that occurred on the public school bus. Plaintiffs do not dispute that the driver and the monitor are employees whose acts are covered by N.C. Gen. Stat. § 143-300.1. We, therefore, hold that N.C. Gen. Stat. § 143-300.1 applies to give the Industrial Commission exclusive jurisdiction over plaintiffs' negligence claims against the Asheville Board.

### The Blue Ridge Defendants

**[3]** This appeal is before us from an order granting a motion to dismiss as to plaintiffs' negligence claim. We hold that the complaint sufficiently alleges a duty, a breach of that duty, and proximate causation to defeat a motion to dismiss, and accordingly conclude that the trial court erred in granting the Blue Ridge defendants' motion to dismiss.

When a party files a motion to dismiss pursuant to Rule 12(b)(6), the question for the court is whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not. *Grant Constr. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001). The court must construe the complaint liberally and "should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277-78, 540 S.E.2d 415, 419 (2000). We review the trial court's dismissal *de novo.*

With respect to the duty element of plaintiffs' negligence claim, defendants rely upon this Court's decision in *King v. Durham County Mental Health Developmental Disabilities & Substance Abuse Auth.*, 113 N.C. App. 341, 439 S.E.2d 771, *disc. review denied,* 336 N.C. 316, 445 S.E.2d 396 (1994). *King* involved a Willie M. class member who left his residential Willie M. program and shot the plaintiff's decedent. Although *King* acknowledged that "[t]he general rule is that there is no duty to protect others against harm from third persons," it also held that "[a]n exception to this general rule is recognized when a special relationship exists between parties." *Id.* at 345, 439 S.E.2d at 774 (internal quotation marks omitted). When that relationship exists, "there is a duty upon the actor to control the third person's conduct and to guard other persons against his dangerous propensities." *Id.* at 345-46, 439 S.E.2d at 774 (internal citations and quotation marks omitted). The Court held that in deciding whether the necessary relationship exists, " 'the chief factors justifying imposition of liability are 1) the ability to control the person and 2) knowledge of the person's propensity for violence.' " *Id.* at 346, 439 S.E.2d at 774 (quoting *Abernathy v. United States*, 773 F.2d 184, 189 (8th Cir. 1985)).

Since *King* involved a motion for summary judgment and not a motion to dismiss, it does not address the allegations necessary to survive a motion to dismiss. Nevertheless, the Court articulated the

test as being "whether any of the defendants had custody of [the third person] or the ability or right to control him." *Id.* at 347, 439 S.E.2d at 775. After reviewing the materials in the *King* record, the Court held that defendants were entitled to summary judgment based on the undisputed fact that participation in the Willie M. program is strictly voluntary in the absence of a court order and, "because there is no evidence of a court order requiring his participation in the Willie M. program, they had no legal right to mandate his return to the facility. It cannot therefore be said that any of the defendants had custody of [the Willie M. class member] or that they had the ability or right to control him." *Id.*

In this case, the parties do not dispute the Blue Ridge defendants' knowledge of the students' propensity for violence. The dispositive issue is the Blue Ridge defendants' ability and right to control the students. Here, plaintiffs' amended complaint alleges: "Bus driver Nancy Patton, bus monitor Gail Guzman, Cooperative Learning Center principal Keith Roden, . . . and other authorities associated with defendants had custody of [J.B. and C.N.] and/or had the ability or right to control them at the pertinent time."[1] In addition, the amended complaint alleges:

> 9. One week prior to the March 17, 1998 shooting, school bus monitor Gail Guzman overheard [C.N.] tell [J.B.] that he [C.N.] had a gun and that it was at home under his mattress. . . .

> 10. Gail Guzman . . . overheard another conversation between [C.N. and J.B.], wherein [C.N.] said to [J.B.], "Let's rob somebody." [J.B.] then responded, "Okay." [C.N.] answered back, "I have the gun." [J.B.] said, "I'll kill them."

> 11. Gail Guzman . . . reported this conversation to the bus driver, Nancy Patton. Upon information and belief, Ms. Patton did not thereafter inform anyone at the CLC or Buncombe County Schools, or the Asheville Police Department, about the gun or about the boys' conspiracy to commit armed robbery and murder.

Plaintiffs then allege that, contrary to N.C. Gen. Stat. § 115C-245 (2003), when "Ms. Patton learned from school bus monitor Gail Guzman that [J.B. and C.N.] had a gun, intended to rob someone, and intended to kill someone," she "took no action whatsoever, including,

---

1. The amended complaint alleges that any acts or omissions of Patton and Guzman are imputed to defendants, including the Blue Ridge defendants, because Patton and Guzman were acting within the course and scope of their duties for the defendants.

but not limited to informing school officials of the announced plan to commit armed robbery and murder." In addition, plaintiffs allege "[t]o the extent that Ms. Gail Guzman failed to inform school bus driver Nancy Patton of the verbal plot to commit armed robbery and murder described above, then Ms. Guzman's failure likewise constitutes a violation of the duty imposed upon her by N.C. Gen. Stat. §115C-245." N.C. Gen. Stat. § 115C-245 provides:

> (b) The driver of a school bus subject to the direction of the superintendent or superintendent's designee . . . shall report promptly to the principal any misconduct upon such bus or disregard or violation of the driver's instructions by any person riding upon such bus. The principal may take such action with reference to any such misconduct upon a school bus, or any violation of the instructions of the driver, as he might take if such misconduct or violation had occurred upon the grounds of the school.
>
> . . . .
>
> (d) The superintendent or superintendent's designee may, in his discretion, appoint a monitor for any bus assigned to any school. It shall be the duty of such monitor, subject to the discretion of the driver of the bus, to preserve order upon the bus and do such other things as may be appropriate for the safety of the pupils and employees assigned to such bus while boarding such bus, alighting therefrom or being transported thereon, and to require such pupils and employees to conform to the rules and regulations established by the local board of education for the safety of pupils and employees upon school buses.

These allegations are sufficient to allege that defendants had "the ability or right to control" J.B. and C.N. and, under *King*, defendants had a duty to protect others against harm from J.B. and C.N. *See also Hedrick v. Rains*, 121 N.C. App. 466, 469, 466 S.E.2d 281, 283-84 ("An exception to the general rule exists where there is a special relationship between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct . . . ."), *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996). The amended complaint also alleges that defendants breached this duty by failing to report J.B.'s and C.N.'s threats of violence.

Defendants contend, however, that no duty existed because plaintiffs cannot establish that defendants had custody or the ability

to control the students after school hours, when the shooting occurred. This argument relates to the question of proximate cause rather than duty. Plaintiffs' complaint does not argue that defendants breached their duty by failing to control the students at the time that they were shooting plaintiff Kathlyn Stein, but rather that the breach occurred while the students were on the bus, at a time when the Blue Ridge defendants did have custody and control over the students. In other words, the negligence occurred not at 7:00 p.m., but rather while the students were on school property and the Blue Ridge defendants had custody and the legal right to control them. *See, e.g., Loram Maint. of Way, Inc. v. Ianni*, 141 S.W.3d 722, 728-29 (Tex. App. El Paso 2004) (employer could be held liable for off-duty shooting by an employee based on its negligent failure to take steps to address that employee's on-duty drug usage); *Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 515-17, 150 Cal. Rptr. 1, 5, 585 P.2d 851, 855 (Cal. 1978) (school could be held liable for injury that occurred on the way to or from school if breach of its duty to supervise students while on school premises proximately caused the injury). *See also* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 56, at 384 (1984 & Supp. 1988) ("So also may a police officer be required to take the keys from a drunk driver, take him into custody, or otherwise take reasonable steps to keep him off the highway.").

The proper question is whether any breach of the Blue Ridge defendants' duty proximately caused plaintiffs' injuries arising from an off campus shooting after school hours. The amended complaint alleges repeatedly that had defendants not breached their duty, C.N.'s gun would have been confiscated and plaintiff Kathlyn Stein would not have been shot; that Kathlyn Stein suffered her injuries "[a]s a direct and proximate result" of defendants' breach of their duty; and that defendants' acts and omissions "have proximately caused damage to plaintiff Michael Hootstein."

Defendants and the dissent rely upon *Williamson v. Liptzin*, 141 N.C. App. 1, 539 S.E.2d 313 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 456, 548 S.E.2d 734 (2001), which involved an appeal following a trial. The Court in that case had before it a full evidentiary record, including expert testimony, compiled after discovery. This case involves a Rule 12(b)(6) motion. Our Supreme Court and this Court have repeatedly cautioned against trial and appellate courts judging proximate causation at the motion to dismiss stage. *See, e.g., Sutton v. Duke*, 277 N.C. 94, 108, 176 S.E.2d 161, 169 (1970)

(although the Court believed, based on the facts alleged in the complaint, that plaintiff's injury could not have been foreseen, nonetheless holding "we cannot say on the basis of the 'bare bones pleadings' that plaintiff cannot prove otherwise"; "[t]his case is not yet ripe for a determination that there can be no liability as a matter of law"); *McMillan v. Mahoney*, 99 N.C. App. 448, 455-56, 393 S.E.2d 298, 303 (1990) ("This Court has held that in reviewing a . . . motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6), the Court is not concerned with whether plaintiff can prove his factual allegations; neither are we concerned with whether plaintiff can establish proximate cause, including foreseeability, at the trial." (internal quotation marks omitted)).

As this Court has previously stated, "[a]n allegation that certain negligence was the proximate cause of an injury is sufficient against a motion to dismiss under Rule 12(b)(6) 'unless it appears affirmatively from the complaint that there was no causal connection between the alleged negligence and the injury.' " *Al-Hourani v. Ashley*, 126 N.C. App. 519, 523, 485 S.E.2d 887, 890 (1997) (quoting *Reynolds v. Murph*, 241 N.C. 60, 64, 84 S.E.2d 273, 275-76 (1954)). Since we cannot say, based solely on the allegations in the complaint, that there is "no causal connection" between Patton's and Guzman's failure to report the students' plan to shoot someone and plaintiff Kathlyn Stein's shooting, plaintiffs' allegation of proximate causation is sufficient to defeat the motion to dismiss. *Compare id.* ("[W]e find no causal connection between the [gas station and oil company] defendants' allegedly selling the gasoline into an antifreeze container in violation of G.S. § 119-43, and the criminal acts of dousing and burning plaintiff's brother. . . . The tragic consequences in this case did not 'flow' from the sale of gasoline into an unapproved container.").

Because this case is before this Court on a motion to dismiss and because the complaint sufficiently alleges a duty, a breach of that duty, and proximate causation, we hold that the trial court erred in granting the Blue Ridge defendants' motion to dismiss. As our Supreme Court stated in *Sutton*, "[t]o dismiss the action now would be 'to go too fast too soon.' " 277 N.C. at 108, 176 S.E.2d at 169 (quoting *Barber v. Motor Vessel "Blue Cat,"* 372 F.2d 626, 629 (5th Cir. 1967)). "By utilizing the discovery rules defendants may ascertain more precisely the details of plaintiff[s'] claim and whether [they] can prove facts which will entitle [them] to have a jury decide the merits of [their] claim." *Id.* at 109, 176 S.E.2d at 170.

STEIN v. ASHEVILLE CITY BD. OF EDUC.

[168 N.C. App. 243 (2005)]

## Conclusion

Plaintiffs' appeal of the trial court's order dismissing the Buncombe County Board is not properly before this Court and is dismissed. The trial court did not err in granting the Asheville Board's motion to dismiss based on the Industrial Commission's having exclusive jurisdiction of plaintiffs' claims against the Asheville Board. We hold, however, that the trial court erred in granting the Blue Ridge defendants' motion to dismiss and remand for further proceedings in accordance with this opinion.

Dismissed in part; affirmed in part; reversed in part.

Judge HUDSON concurs.

Judge TYSON concurs in part and dissents in part in a separate opinion.

TYSON, Judge concurring in part, dissenting in part.

I fully concur in the majority's reasoning and result to dismiss plaintiffs' appeal from the dismissal of the Buncombe County Board and to affirm the trial court's dismissal of the Asheville Board. I disagree with the majority's decision to reverse the trial court's order granting the Blue Ridge defendants' motion to dismiss. I respectfully dissent.

## I. Negligence

Plaintiffs contend and the majority's opinion concludes the complaint sufficiently alleges a negligence action against the Blue Ridge defendants. I disagree.

> A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting "the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory."

*Forsyth Memorial Hospital v. Armstrong World Industries Inc.*, 336 N.C. 438, 442, 444 S.E.2d 423, 425-26 (1994) (alteration in original) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991)). To state a claim for relief for negligence, a plaintiff's complaint must allege: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the defendant's breach was the

actual and proximate cause of the plaintiff's injury. *Williamson v. Liptzin*, 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000) (quoting *Beaver v. Hancock*, 72 N.C. App. 306, 311, 324 S.E.2d 294, 298 (1985)), *appeal dismissed*, 353 N.C. 456, 548 S.E.2d 734 (2001); *see also Tise v. Yates Constr. Co.*, 345 N.C. 456, 460, 480 S.E.2d 677, 680 (1997). The majority's opinion correctly states the proper standard of review to be applied on a Rule 12(b)(6) motion to dismiss. The trial court properly applied that standard, and its order should be affirmed.

### A. Duty

"The general rule is that there 'is no duty to protect others against harm from third persons' " unless a special relationship exists between the parties. *King v. Durham Co. Mental Health Authority*, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774, *disc. rev. denied*, 336 N.C. 316, 445 S.E.2d 396 (1994) (quoting W. Page Keeton, *et al., Prosser and Keeton on the Law of Torts* § 56, at 385 (5th ed. 1984)) (citations omitted). When a special relationship exists, "there is a duty upon the actor to control the third person's conduct, and to guard other persons against his dangerous propensities." *King*, 113 N.C. App. at 345-46, 439 S.E.2d at 774 (quotations omitted).

As listed in *King*, examples of "special relationships" recognized by North Carolina courts include: (1) parent and child, *Moore v. Crumpton*, 55 N.C. App. 398, 403-04, 285 S.E.2d 842, 845, *modified*, 306 N.C. 618, 295 S.E.2d 436 (1982); (2) master and servant, *Vaughn v. Dep't. of Human Resources*, 296 N.C. 683, 686, 252 S.E.2d 792, 795 (1979); (3) landowner and licensee; (4) custodian and prisoner, *Hull v. Oldham*, 104 N.C. App. 29, 38, 407 S.E.2d 611, 616, *disc. rev. denied*, 330 N.C. 441, 412 S.E.2d 72 (1991); and (5) mental patient and hospital, *Pangburn v. Saad*, 73 N.C. App. 336, 347-48, 326 S.E.2d 365, 372-73 (1985). *See King*, 113 N.C. App. at 346, 439 S.E.2d at 774 (other citations omitted). "In each example, 'the chief factors justifying imposition of liability are 1) the ability to control the person and 2) knowledge of the person's propensity for violence.' " *King*, 113 N.C. App. at 346, 439 S.E.2d at 774 (quoting *Abernathy v. United States*, 773 F.2d 184, 189 (8th Cir. 1985)) (other citations omitted). Here, the parties do not dispute the Blue Ridge defendants' "knowledge of [the juveniles'] propensity for violence." *Id.* The dispositive issue becomes whether Blue Ridge had "the ability to control" the juveniles when plaintiffs were injured. *Id.*

In *King*, the victim was shot by a juvenile with a known history of committing violent crimes. 113 N.C. App. at 342, 439 S.E.2d at 772.

**STEIN v. ASHEVILLE CITY BD. OF EDUC.**

[168 N.C. App. 243 (2005)]

The juvenile resided in a facility that provided treatment to "Willie M." class members. *Id.* The facility was supervised by the Durham County Mental Health Department, and the juvenile was required to stay at the facility at all times. *Id.* at 343, 439 S.E.2d at 772. Durham County Mental Health failed to inform the police when he escaped from the facility. *Id.* at 343, 439 S.E.2d at 773. The juvenile killed Sherri Sparrow King after his escape. *Id.* King's estate brought an action against Durham County Mental Health alleging its negligence caused the victim's death. *Id.* We held the defendant did not have custody of the juvenile or the ability to control him at the time he killed King, because there was "no evidence of a court order requiring his participation in the Willie M. program, [therefore, the defendants] had no legal right to mandate his return to the facility." *Id.* at 347, 439 S.E.2d at 775. In affirming summary judgment for the defendants, we concluded, "[Durham Mental Health] cannot be held liable for the conduct of [the juvenile] and are entitled to judgment as a matter of law." *Id.*

The majority's opinion at bar attempts to distinguish *King* on the grounds that it ruled on a motion for summary judgment and not a motion to dismiss. However, the majority's opinion fails to explain how the Blue Ridge defendants owed these plaintiffs a duty "as a matter of law." *Id.*

Here, plaintiffs' complaint alleges facts, which taken as true, conclusively establish that the Blue Ridge defendants did not have "the ability or right to control" the juveniles when the violent acts occurred. *Id.* Plaintiffs' complaint alleges, "Bus driver Nancy Patton, bus monitor Gail Guzman, Cooperative Learning Center principal Keith Roden . . . and other authorities associated with defendants had custody of [the juveniles] and/or had the ability or right to control them at the pertinent time." Plaintiffs' complaint also alleges that CLC was a school operated by the Blue Ridge defendants and that Patton and Guzman were employed by them, Buncombe County Schools, and Asheville City Schools. Plaintiffs' complaint does not state or define the meaning of "at the pertinent time." In a 12(b)(6) motion to dismiss, these allegations are taken as true and show the Blue Ridge defendants had control over the juveniles when the conversation occurred on the school bus. The complaint shows that the juveniles used a gun C.M. "had at home under his mattress." This allegation shows that the Blue Ridge defendants had neither custody over the juveniles nor the ability to control them at the time Stein was shot.

STEIN v. ASHEVILLE CITY BD. OF EDUC.

[168 N.C. App. 243 (2005)]

Our case law establishes that "the pertinent time" in a negligence action requires consideration of whether the Blue Ridge defendants had custody over or the right to control the juveniles when plaintiffs suffered injury: the time of the shooting. *See O'Connor v. Corbett Lumber Corp.*, 84 N.C. App. 178, 352 S.E.2d 267 (1987) (employer did not have requisite level of custody over the work release inmate employee to create a special relationship— employer had no duty to protect the public outside the scope of employment, which occurred while the perpetrator was not on the job or the job site); *see also King*, 113 N.C. App. at 346-47, 439 S.E.2d at 774 (held no liability because no special relationship existed where the treatment facility did not have custody, ability, or right to control the perpetrator after he left the facility); *Sage v. U.S.*, 974 F. Supp. 851, 860 (E.D. Va., 1997) (holding a "confinement setting" and "heightened obligation to monitor and direct the third party's movements" are required to show ability to control) (citing *Nasser v. Parker*, 455 S.E.2d 502 (Va. 1995)).

Plaintiffs' allegations conclusively establish that the Blue Ridge defendants did *not* possess or exercise any ability or right to control defendants during the time, place, or manner where and when plaintiffs were injured. Plaintiffs allege: (1) the juveniles "were at all times students at CLC and traveled to and from CLC on a public school bus . . . ;" (2) "at approximately 7:00-8:15 p.m. on March 17, 1998, [the juveniles and two others] were armed with the loaded handgun [and] began stopping cars at the intersection . . . near Memorial Mission Hospital in Asheville . . . ;" and (3) "at approximately 8:15 p.m., [J.B.] used the loaded handgun provided by [C.N.] to shoot Stein in the head . . . ." None of plaintiffs' allegations assert that at the time the shooting occurred, the juveniles were traveling on the school bus, attending CLC or any other activity within the Blue Ridge system, "skipping" a required activity conducted by the Blue Ridge defendants, or under the supervision, custody, or control of the Blue Ridge defendants or any of its employees.

Plaintiffs' complaint fails to state a claim for negligence against the Blue Ridge defendants "as a matter of law." *King*, 113 N.C. App. at 347, 439 S.E.2d at 775. It fails to allege the Blue Ridge defendants had custody or control at the time the incident occurred to show a duty owed to plaintiffs. As plaintiffs' complaint fails to establish the Blue Ridge defendants owed them a duty, the trial court properly granted the Blue Ridge defendants' motion to dismiss. This assignment of error should be overruled.

## B. Proximate Cause

Presuming, as the majority's opinion contends, that plaintiffs' complaint establishes the Blue Ridge defendants owed a duty to plaintiffs and breached that duty, the complaint fails to allege that such breach proximately caused plaintiffs' injuries.

Proximate cause is defined as

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Williamson*, 141 N.C. App. at 10, 539 S.E.2d at 319 (quoting *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984) (citations omitted)). The law does not require a defendant to "foresee events which are *merely possible* but only those which are reasonably foreseeable." *Id.* at 11, 539 S.E.2d at 319 (quoting *Hairston*, 310 N.C. at 234, 311 S.E.2d at 565 (emphasis added) (citations omitted)). As "every person has the right to presume that every other person will perform his duty and obey the law," criminal acts are not presumed to be foreseeable. *Wilkinson v. R.R.*, 174 N.C. 761, 766, 94 S.E. 521, 523 (1917) (quoting Cyc., vol. 29, p. 516; *Wyatt v. R.R.*, 156 N.C. 313, [72 S.E. 383 (1911)]).

In addition to foreseeability, proximate cause requires a consideration of

> whether the cause is, in the usual judgment of mankind, likely to produce the result; whether the relationship between cause and effect is too attenuated; whether there is a direct connection without intervening causes; whether the cause was a substantial factor in bringing about the result; and whether there was a natural and continuous sequence between the cause and the result.

*Williamson*, 141 N.C. App. at 11, 539 S.E.2d at 319-20 (quoting *Wyatt v. Gilmore*, 57 N.C. App. 57, 59, 290 S.E.2d 790, 791 (1982)).

Plaintiffs' complaint alleges Guzman overheard the conversation between the juveniles "one week prior to the March 17, 1998 shooting." Regarding foreseeability to the Blue Ridge defendants, plaintiffs' complaint fails to allege any specific plans overheard by the Blue Ridge defendants or their employees beyond the general comments,

"Let's rob somebody;" "I have the gun;" and "I'll kill them." These statements appear to be general threats that are not specific to any time, place, or intended victim, and are not a reasonably foreseeable criminal act against Stein. Under the majority's analysis, these statements are sufficient to establish a duty, proximate cause, and foreseeability on the Blue Ridge defendants to survive a motion to dismiss. If so, the Blue Ridge defendants would be liable to any victim, at any time or place, whom the juveniles might eventually "rob" or "kill." The majority's result establishes a duty to the whole world, imposes strict liability, and also eliminates the presumption that criminal acts are not foreseeable. *See Wilkinson,* 174 N.C. at 766, 94 S.E. 523. Plaintiffs also failed to allege either Patton or Guzman were aware of any specific violent acts committed by the juveniles. *Williamson,* 141 N.C. App. at 11, 539 S.E.2d at 319.

### C.  Failure to Join

The Blue Ridge defendants' liability to plaintiffs, if any, is derivative of the acts of its alleged employees. Here, plaintiffs failed to join either Patton or Guzman, the juveniles' parents, or the other perpetrators as named defendants to this action.

Plaintiffs' failure to allege the juveniles were in custody or under the control of the Blue Ridge defendants for the entire period between the conversation on the school bus and the time of the shooting more than one week later allows opportunity for numerous "intervening causes." *Id.* Plaintiffs' complaint fails to plead a "natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries . . . ." *Id.* at 10, 539 S.E.2d at 319.

Justice Cardozo stated, long ago in a case that is required hornbook law for all first-year law students, "One who seeks redress at law does not make out a cause of action by showing without more that there has been damage to his person." *Palsgraf v. Long Island R. Co.,* 162 N.E. 99, 101, *reh'g denied,* 164 N.E. 564 (N.Y. 1928).

> Proof of negligence in the air, so to speak, will not do. . . . In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury.

*Id.* at 99-100 (quotations and citations omitted). Plaintiffs' complaint fails to show that the Blue Ridge defendants, aside from any duties or

allegations pertaining to the other defendants, had the ability to either "avert[] or avoid[]" the injury. *Id.*

Plaintiffs failed to allege the Blue Ridge defendants' breach of a duty, if any, proximately caused plaintiffs' injuries. The trial court properly dismissed plaintiffs' complaint for failure to state a claim of negligence.

## II. Conclusion

I concur in the majority's opinion as it: (1) dismisses plaintiffs' appeal of the trial court's order dismissing the Buncombe County Board because the appeal is not properly before this Court; and (2) affirms the Asheville Board's motion to dismiss because the Industrial Commission has exclusive jurisdiction of plaintiffs' claims against the City Board.

The trial court did not err in granting the Blue Ridge defendants' motion to dismiss, and its order should be affirmed. Plaintiffs' complaint failed to state a claim for negligence against the Blue Ridge defendants by failing to allege a duty owed, breach of that duty, or proximate cause. Further, plaintiffs failed to join the employees alleged to be responsible or the parents of the juveniles who perpetrated the acts and caused the injuries to plaintiffs.

Plaintiff Kathlyn Stein suffered serious and lifelong injuries and could have rightfully asserted her claims against all those individuals who caused her injuries. Her complaint fails to assert her claims against the proper parties. "This Court should not, however, permit these 'bad facts' to lure it into making 'bad law.'" *N.C. Baptist Hospitals, Inc. v. Mitchell*, 323 N.C. 528, 539, 374 S.E.2d 844, 850 (1988). I respectfully dissent.